**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Jamila Smith,<br><br>              Debtor. | Chapter 7<br>Bankruptcy No. 20-11452<br>Honorable Judge Jack B. Schmetterer |
| Christina Lattner,<br><br>              Plaintiff.<br><br>     v.<br><br>Jamila Smith,<br><br>              Defendant. | Adversary No. 20-00328 |

**OPINION ON REQUEST FOR ENTRY OF DEFAULT BY CLERK [DKT. NO. 8]**

This Adversary Proceeding relates to the bankruptcy case of Jamila Smith (the "Defendant"). Christina Lattner (the "Plaintiff") brought this adversary action to dismiss the Defendant's case under 11 U.S.C. §707(a) and 707(b).[1] For the reasons articulated below, the Plaintiffs' Request for Entry of Default by Clerk (the "Motion") will be **DENIED** by separate order to be entered concurrently herewith.

**BACKGROUND**

The Defendant filed for chapter 7 bankruptcy on May 26, 2020. [Bankr. No. 20-11452, Dkt. No. 1]. The Defendant listed three total liabilities: two student loans totaling $3,196 and, at issue here, a debt to the Plaintiff of $4,270.06 (the "Debt"). *Id.* at p. 24. The Plaintiff filed the present action on August 31, 2020, (the "Complaint") [Dkt. No. 1], with the Plaintiff mailing the Defendant a summons and copy of the complaint on September 4, 2020. [Dkt. No. 5]. On October 6, 2020, the court ordered the Defendant to file an answer to the Complaint by November 1, 2020. [Dkt. No. 6]. No answer was filed and the Plaintiff filed the present Motion on November 9, 2020. [Dkt. No. 8].

Based upon the Plaintiff's filings, the Defendant's debt to the Plaintiff stems from an April 2019 automobile accident, for which the Defendant was apparently liable but lacked insurance.

---

[1] An adversary proceeding is not appropriate for the relief sought by Plaintiff. *See* Fed. R. Bankr. P. 7056; 11 U.S.C. § 707(b) (stating request for dismissal ought to be filed by motion instead). But, given that the Plaintiff is pro se, this adversary proceeding will be construed as if it was a motion made in the bankruptcy case.

[Dkt. No. 1, ¶10].[2] The Plaintiff began litigation in Cook County, Illinois against the Defendant (Case No. 2019-M1-014039) and received a judgment for $4,408.36 on November 14, 2019. *Id.* at ¶¶13, 16. At the Defendant's request, the two parties apparently agreed to a payment plan where the Defendant paid the Plaintiff $300 per month until the debt was repaid; with payments beginning on April 15, 2020. *Id.* at ¶18. The Plaintiff alleges the Defendant only ever made one such $300 payment which came a month late on May 15, 2020. *Id.* at ¶20. Eleven days later, the Defendant filed for bankruptcy. *Supra.*

The Plaintiff, through her Complaint, seeks to prevent the discharge of the Debt owed her pursuant to 11 U.S.C. § 707(a)(1) and 707(b)(3). The Complaint's main argument is that the Defendant filed for bankruptcy solely to avoid the Debt and did so in bad faith. The Plaintiff points to, *inter alia*, the allegation that the Defendant entered into the agreement for the $300 installment payments solely to have her license reinstated and with no intent to actually make all of the payments as evidence of bad faith. [Dkt. No. 1, Ex. B, G]. The Plaintiff's Motion now seeks a default against the Defendant for failing to respond. [Dkt. 8, ¶10]. The Defendant has not appeared in the present adversary proceeding and appears to lack counsel for the proceeding based upon her counsel's scope of representation letter from the main bankruptcy case. [Bankr. No. 20-11452, Dkt. No. 1, p. 55].

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), (J), and (O).

## DISCUSSION

The Plaintiff moves under Fed. R. Civ. P. 55 ("Rule 55"), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7055, seeking a default against the Defendant for failing to plead in the present action. While the Motion merely seeks an entry of default, it is clear from Plaintiff's oral statements to the Court on November 10, 2020 that what Plaintiff is really seeking is an entry

---

[2] The Defendant's mother also apparently faced liability for the same accident, however this debt was discharged through the mother's chapter 7 bankruptcy proceeding. [Bankr. No. 19-21410, Dkt. 1, 12]. The Plaintiff did not bring an adversary action in the mother's bankruptcy case.

2

of default judgment.[3] A Rule 55 default consists of two parts: first, the clerk must enter a default, second, the court may enter a default judgment.[4] *See Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 961 F.3d 942, 947, 948 (7th Cir. 2020). While the Defendant has defaulted by failing to respond in time, the more difficult question concerns default judgment. For the following reasons, the Plaintiff has failed to establish sufficient grounds for the entry of a default judgment.[5]

### A. Standard for Default Judgment

"Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *In re Villegas*, 132 B.R. 742, 746 (9th Cir. B.A.P. 1991); *see also AT&T Universal Card Services, Corp. v. Sziel (In re Sziel)*, 206 B.R. 490, 493 (Bankr. N.D. Ill 1997) (noting courts' concerns with rubber stamping default judgments in bankruptcy). Granting a motion for default judgment "lies within the sound discretion of the trial court." *Merrill Lynch Mortg. Corp. v. Narayan.*, 908 F.2d 246, 254 (7th Cir. 1990). That discretion is "wide." *Villegas*, 132 B.R. at 746.

"Upon default, the well-pled allegations of the complaint … are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Still, before entering a default judgment, the court must "ensure the sufficiency of the complaint." *Klarchek v. RJK Investors (In re Klarchek)*, 509 B.R. 175, 188 (Bankr. N.D. Ill. 2014). Therefore, amongst other possibilities, the court should deny a motion for default judgment if "the complaint would not survive a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6)." *Id.*; *see also Mercantile Bank v. Canovas*, 437 B.R. 423, 427 (Bankr. N.D. Ill. 1998) (default judgment "may be denied where there are insufficient facts to support a cause of action."); *In re Sanchez*, 277 B.R. 904, 907 (Bankr. N.D. Ill. 2002) (the issue before the court on a motion for default judgment is "whether [p]laintiff has shown at least *prima facie* facts" required for their claims).

The allegations contained in the Complaint are insufficient to support the relief requested and the Complaint would not survive a motion to dismiss if filed.

---

[3] The Motion does not cite to a specific rule of civil procedure, but does ask for a "default … as a result of the failure to respond" which corresponds to Fed. R. Civ. P. 55. [Dkt. No. 8, ¶10].

[4] Pursuant to local rules, Rule 55 default judgments in the United States Bankruptcy Court for the Northern District of Illinois are entered solely by the court and not by the clerk. *Klarchek v. RJK Investors (In re Klarchek)*, 509 B.R. 175, 185 (Bankr. N.D. Ill. 2014) (citing N.D. Ill. Local Bankruptcy Rule 7055-2).

[5] The Plaintiff also failed to file a "Notice of Motion" or a "Proposed Order" as required by N.D. Ill. Local Bankruptcy Rule 9013-1(C)(1), (5).

3

### B. Sufficiency of the Complaint

The Complaint seeks relief under two counts, one pursuant to 11 U.S.C. §§ 707(a)(1) and the other pursuant to 707(b)(3).[6] Section 707(a)(1) allows the court to dismiss a bankruptcy case for cause due to "unreasonable delay by the debtor that is prejudicial to the creditors." 11 U.S.C. § 707(a)(1). Section 707(b) allows the court to dismiss or convert cases if "the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). When determining that abuse, section 707(b)(3) requires the court to consider "whether the debtor filed … in bad faith; or the totality of the circumstances … of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

### I.    Section 707(a)(1)

Section 707(a)'s "for cause" dismissal, compared to dismissal under section 707(b), is "a more open-ended inquiry." *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015). It is not limited to procedural defects in the bankruptcy petition. *Id.* Rather than ask for a more broad dismissal for cause generally, the Complaint specifically requests relief under section 707(a)(1), which "punishes unreasonable delay, by a debtor who has filed a bankruptcy petition, in taking steps necessary to the administration of the bankrupt estate." *Id.*; *see also In re Lang*, 5 B.R. 371 (Bankr. S.D. N.Y. 1980) (finding the precursor to section 707(a)(1) applied only to post-petition delay).

There is no evidence that the Defendant or the Defendant's bankruptcy counsel has taken any steps to delay the Defendant's bankruptcy case. The Complaint contains no allegations that the Defendant has been slowing the bankruptcy process, nor does the case's docket. The Defendant filed for bankruptcy in 2020 and the docket shows a routine Chapter 7 case up until the Plaintiff filed this adversary proceeding, on the final day for objections to the Defendant's discharge. The Complaint lacks any allegations for even a *prima facie* case under section 707(a)(1).

### II.    Section 707 (b)(3)

A. Primarily Consumer Debts

To begin, dismissal under section 707(b) requires a debtor to have "primarily consumer debts." 11 U.S.C. § 707 (b)(1); *see also In re Terzo*, 502 B.R. 553, 556, 557 (Bankr. N.D. Ill.

---

[6] While labelled "Count I" and "Count IV" in the Complaint, there are only two counts.

4

2013). Courts have interpreted consumer debts, as defined in 11 U.S.C. § 101 (8),[7] to generally not include "[d]ebts that arise from negligence." *In re Zgonina*, No. 19-90467, 2019 WL 6170776, *3 (Bankr. C.D. Ill. Nov. 19, 2019) (citing *In re Peterson*, 524 B.R. 808, 811-813 (Bankr. S.D. Ind. 2015)). More specifically consumer debts do not include "[d]ebt arising from the negligent operation of an automobile." *Peterson*, 524 B.R. at 812 (Bankr. S.D. Ind. 2015) (citing *inter alia In re White*, 49 B.R. 869 (Bankr. W.D. N.C. 1985)). The term "primarily" has typically "been construed as meaning at the very least a majority." *In re Sekendur*, 334 B.R. 609, 618 (Bankr. N.D. Ill. 2005).

From the beginning then, analyzing whether to dismiss the Defendant's case under section 707(b) runs into problems. The majority of the Defendant's debt is from the automobile accident involving the Plaintiff. This suggests then that the Defendant's debts are not primarily "consumer debts" and the court cannot dismiss the case under section 707(b). The Defendant however claimed her debts were primarily consumer in her bankruptcy petition. [Bankr. No. 20-11452, Dkt. No. 1, p. 6]. As neither party has contested whether the Defendant has primarily consumer debts, the court will perform the analysis required for a dismissal under 707(b)(3) regardless.[8]

B. Bad Faith Under Section 707(b)(3)

To determine "bad faith" under section 707(b)(3) the court applies "the statutory "totality of the circumstances test" based solely on ability to pay and without necessity to show proof of misconduct." *In re Victor & Stacy Watts*, 557 B.R. 640, 646 (N.D. Ill. 2016) (*citing In re Bacardi*, No. 09 B 25757, 2010 WL 54760, at *3 (Bankr. N.D. Ill. Jan. 6, 2010)). In addition to the Defendant's ability to pay, the totality of the circumstances test also looks at four primary factors:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable; and
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.

---

[7] Defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

[8] The Plaintiff specifically states in the Complaint that she is not asserting that the Defendant failed the section 707 (b)(2) means test. [Dkt. No. 1, p. 4, ¶ 32].

5

*In re Deutscher*, 419 B.R. 42, 45 (Bankr. N.D. Ill. 2009) (citing *In re Cutler*, No. 08-15568-AJM-7A, 2009 WL 2044378 (Bankr. S.D. Ind. July 9, 2009)).

The Plaintiff, in the Complaint, encourages the use of a somewhat different fourteen-point totality of the circumstances test to determine bad faith. [Dkt. No. 1, p. 5, ¶35] (citing, *inter alia*, *In re Marino*, 388, B.R. 679, 682 (Bankr. E.D. N.C. 2008)). That test, sometimes called the "smell test," is one of several tests courts use to determine bad faith under section 707. *In re Wagntiz*, No. 03 C 5106, 2004 WL 626821, *9, 10 (N.D. Ill. March 29, 2004) (discussing bad faith under section 707(a)); *see also In re Snyder*, 509 B.R. 945, 951, 952 (Bankr. D.N.M. 2014) (noting tests of 14, 15, and 16 factors and applying one as a checklist).[9] "[T]he presence of only one of [the smell test] factors generally will not support a bad faith finding." *Wagnitz*, 2004 WL 626821, *10. As many of the smell test factors overlap or repeat, the most important factor is the Defendant's ability to pay. *Id.*

The Seventh Circuit summarized the basic question of section 707(b) as "whether the debtors' income is high enough to enable them to repay a significant amount of debt without sacrificing a reasonable standard of living." *Schwartz*, 799 F.3d at 763.

In the Complaint the Plaintiff attempts to establish through various allegations that the Defendant is acting in bad faith. Perhaps the most significant is that the Defendant petitioned for bankruptcy for the "sole purpose of obtaining discharge of the [P]laintiff's judgment." [Dkt. No. 1, p. 5, ¶ 34]. Other allegations from the Plaintiff include that the Defendant is 19 years old, pays no rent, is using bankruptcy solely to vacate a circuit court judgment, and that the Defendant made agreements to pay that judgment to the Plaintiff with no intention of paying and solely for the Defendant to have her license reinstated. [Dkt. No. 1, pp. 2, 3, 5]. The Plaintiff argues these correspond with five of the fourteen factors of the "smell test:"

> (3) Debtor filed the case in response to a judgment pending litigation…;
> (4) The debtor made no efforts to repay his debts;
> (5) The unfairness of the use of Chapter 7;
> (10) The debtor's overly utilizing the protection of the Code to the unconscionable detriment of creditors;
> (11) The debtor employed a deliberate and persistent plan of evading a single major creditor;

[Dkt. No. 1, p. 5, ¶35] (corresponding to the factors in *Marino*, 388 B.R. at 682).

---

[9] The four-factor test used in *Deutscher* comes from a non-exclusive five factor test used by the Fourth Circuit Court of Appeals in *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991).

### i.    *Single Large Creditor*

The Plaintiff's allegations, even taken together, fail to show bad faith by the Defendant arising to a level of abuse for dismissal under section 707(b). Plaintiff's strongest argument is that the Defendant's bankruptcy is primarily to foil the Plaintiff's judgment against the Defendant. Bankruptcies filed to avoid a single creditor are typically treated poorly by the courts. *See In re Collins*, 250 B.R. 645 (Bankr. N.D. Ill. 2000) (sanctioning debtor for filing solely to avoid judgment at end of years of litigation, where debtor had ability to pay judgment). However, courts tend to limit bad faith to egregious cases where the single debt being avoided is "based on conduct akin to fraud, misconduct, or gross negligence." *In re Zick*, 931 F.3d 1124, 1129 (6th Cir. 1991) (finding bad faith after applying "smell test," where debtor sought to avoid $600,000 debt for violating non-compete agreement); *see also In re Uche*, 555 B.R. 57, 62 (Bankr. M.D. Fl. 2016) ("Indeed, if filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able [to] file a bankruptcy case."). Here, though specific details are not provided, the Defendant was apparently involved in a normal traffic accident, which is hardly an egregious case. Even if the Plaintiff's argument here is taken as true, it only accounts for one of the smell test factors, and more than one factor is typically required for dismissal.

### ii.    *Bad-Faith Pre-Petition Payment Plan*

Plaintiff's next argument, that the Defendant entered into an installment payment plan solely to regain her license, and with no intention of paying, is nonsensical. The Defendant had her license suspended by the Illinois government pursuant to the Illinois Safety and Family Financial Responsibility Law. 625 ILCS 5/7. Under that law, the Defendant, instead of attempting a repayment plan, could have simply filed bankruptcy, including the Plaintiff's claims, and then noticed the Illinois Secretary of State to have her license reinstated. 625 ILCS 5/7-211(a)(3). Thus, if anything, the Defendant's attempt to enter into a repayment plan shows a good faith effort to pay down her debts. Further, Plaintiff claims the Defendant "made no effort to pay [her] debts," but also alleges that the Defendant did make one monthly payment to the Plaintiff. [Dkt. No. 1, p. 3, ¶20]. Again, the Defendant's actions suggest a good faith attempt to make the payment plan work, in direct contrast to factor four cited by the Plaintiff. *See Marino*, 388 B.R. at 682. Further, the single payment was more than the Plaintiff would receive in a no-asset chapter 7.

7

### iii.    *Defendant Could Pay*

Finally, Plaintiff's various allegations that attempt to show that the Defendant's financial situation is such that the Defendant could repay her debts amount to nothing. The Plaintiff has made no allegations that the Defendant's schedules contain falsehoods. The Defendant's filings show monthly take home pay of $860.12 and monthly expenses of $1,200. The Complaint contains no allegations suggesting the Defendant could overcome her claimed monthly deficit of $339.88 and then make additional $300 per month payments to the Plaintiff. Neither does the Plaintiff allege that the Defendant's lifestyle is somehow lavish; as even the Plaintiff notes that the Defendant lives for free with her mother. *See In re Plichta*, 589 B.R. 794, 816, 817 (Bankr. N.D. Ill. 2018) (finding creditor failed to show abuse where debtors had spent $40,000 in three months on mortgage and housing expenses); *In re Lowe*, 561 B.R. 688 (Bankr. N.D. Ill. 2016) (finding abuse where "relatively high income" debtor surrendered condominium and therefore had sufficient funds to pay off creditors); *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010) (denying debtors' attempt to keep two homes at expense of secured creditors); *Bacardi*, 2010 WL 54760, *6 (holding that debtors abused chapter 7 where they made over $200,000 annually and attempted to keep the significantly more expensive of their two homes). The Plaintiff has made no substantive allegations that the Defendant could actually repay the Plaintiff her debts.

### iv.    *Applying Factors*

Applying the four-factor totality of the circumstances test, the court in *Deutscher*, found abuse where the debtors bought a yacht and luxury SUV prior to filing and the debtors' schedules truthfulness was brought into question. *Deutscher*, 419 B.R. at 46, 47. Applying the same four-factor test here, all four factors come out in favor of the Defendant. Here the Defendant presents a lean lifestyle and the voracity of her schedules have not been brought into question. Similarly, applying the fourteen-factor test suggested by the Plaintiff yields the same result with, at most, one of the fourteen factors (avoidance of a single creditor) suggesting bad faith.

The Plaintiff, in the Complaint, has provided no reasons to suggest the Defendant is anyone but the "honest but unfortunate debtor" seeking a "fresh start." *See Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991). The Complaint fails to establish even a *prima facie* case and, accordingly,

8

the Court will not grant the Plaintiff a default judgment.

## CONCLUSION

For the foregoing reasons, the Court will by separate order deny the Plaintiff's Motion for Default and dismiss the Complaint.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of February 2021